**UNION & NEW HAVEN TRUST CO. v. EATON, Collector of Internal Revenue.**

District Court, D. Connecticut. June 2, 1927.

No. 3111.

**1. Internal revenue �köö8(14)—Whether corporation is charitable corporation, within provision of Revenue Act, must be determined from its charter, rather than form of its actual organization (Revenue Act 1921, § 403a, subd. 3 [Comp. St. § 6336¾d]).**

Under Revenue Act 1921, § 403a subd. 3 (Comp. St. § 6336¾d), authorizing deduction of bequests to charitable corporations from value of gross estate in computing federal estates tax, courts must look to corporation's charter to determine the actual purposes for which it was organized, and not to the form of its actual organization.

**2. Internal revenue ⊧köö8(14)—Corporation organized to promote "practical benevolence" held organized exclusively for "charitable purposes," within provision of Revenue Act (Revenue Act 1921, § 403a, subd. 3 [Comp. St. § 6336¾d]).**

Bequest to a corporation, the object of which "is the promotion of practical benevolence in the city of New Haven," *held* a bequest to a corporation organized exclusively for charitable purposes, within meaning of Revenue Act 1921, § 403a, subd. 3 (Comp. St. § 6336¾d), authorizing deduction of such a bequest from value of gross estate in computing federal estates tax.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Use—Used.]

**3. Internal revenue ⊧köö4—Rule of strict construction of statutes exempting from taxation finds exception, where public policy dictates more liberal attitude.**

The rule requiring strict construction of statutes exempting property from taxation, being in the interest of the public policy, finds an exception where a higher public policy dictates more liberal attitude.

**4. Internal revenue ⊧köö8(14)—Inheritance tax levies made by states on charitable bequests held improperly deducted from such bequests in calculating federal estates tax (Revenue Act 1921, § 403a, subd. 3 [Comp. St. § 6336¾d]).**

Where will made specific devises to various charities, and provided also for division of residue of estate between such charities, *held*, various inheritance tax levies made by different states on the various charitable bequests which were payable out of the residue of the estate should not have been deducted from the amount of such charitable bequests in determining federal estates tax under Revenue Act of 1921, § 403a, subd. 3 (Comp. St. § 6336¾d).

**5. Internal revenue ⊧köö38(7)—Plaintiff, suing to recover federal estates tax previously paid, may set up ground of refund not specified in claim for refund.**

That specified ground for refund of federal estates tax was not urged in claim for refund *held* not to preclude claimant from setting up such ground in action to recover tax.

At Law. Action by the Union & New Haven Trust Company, executor of the estate of Mary E. Scranton, deceased, against Robert O. Eaton, Collector of Internal Revenue. Decree for plaintiff.

J. Dwight Dana, of New Haven, Conn., for plaintiff.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., and J. D. Smith, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

THOMAS, District Judge. This is an action to recover back an additional federal es-

tate tax of $3,206.78 assessed against and paid by the estate of Mary E. Scranton, who died December 7, 1921, a resident of New Haven.

Of this additional assessment, it is alleged that approximately $2,364.20 resulted from the action of the department in holding that the bequests of about $59,105.11 to the United Workers were not exempt from the estate tax. By a stipulation filed after the case had been submitted, it was agreed that, if the court finds that the plaintiff is entitled to recover in the matter of the bequest to the United Workers, the amount is $2,303.51, with interest from November 9, 1925.

The balance of approximately $842.58 resulted from the action of the department in deducting from the amount of the charitable bequests the amounts of the inheritance taxes paid Connecticut and other states, which, under the terms of the will, were to be paid out of the residuary estate. In the same stipulation it is agreed between counsel that, if the finding is for the plaintiff, the parties will agree on the amount the plaintiff is entitled to recover.

From the allegations of the complaint, which are admitted, the exhibits and the testimony, it appears that Mary E. Scranton, residing in New Haven, died December 7, 1921, testate, whose last will and codicil were duly admitted to probate, and the plaintiff, named as executor therein, was appointed and qualified. Under article 9 of the will, she bequeathed the sum of $5,000 to each of eight corporations, among which was the United Workers, a corporation chartered by the General Assembly of the state of Connecticut by resolution approved on July 17, 1874. Under the residuary clause of the will, as modified by the codicil thereto, the residue of the decedent's estate was bequeathed to certain individuals and corporations, to be equally divided among them. Among these was the United Workers, which accepted the provisions made for it, and received from the plaintiff, as executor of said estate, the sum of $5,000 in full payment of the legacy given in article 9 and one-seventeenth of the residuary estate.

On or about the 2d day of December, 1922, the plaintiff, as executor of said estate, filed with the collector of internal revenue for the district of Connecticut a federal estate tax return for the estate of the decedent, in which return the plaintiff, as such executor, deducted from the gross estate the amounts given and bequeathed by said will and codicil to the certain corporations named therein, on the ground that such bequests were made to or for the use of corporations organized and operat-

ed exclusively for religious, charitable, scientific, literary or educational purposes, within the meaning of section 403a (3) of the Revenue Act of 1921 (Comp. St. § 6336¾d). The amount of estate tax as shown on said return was duly paid to the collector of internal revenue for the district of Connecticut.

Thereafter the plaintiff received a letter, under date of July 3, 1924, from the Commissioner of Internal Revenue, notifying it that a tentative deficiency in federal estate tax in the sum of $3,405.43 had been assessed against the plaintiff as executor of said estate; the major portion of said deficiency being assessed on the ground that the bequests to the United Workers were not exempt from federal estate tax, and should not have been deducted from the gross estate in arriving at the net estate. A portion of said tentative tax was due to the fact that, in determining the amount to be deduced from the gross estate on account of bequests to charitable corporations, pursuant to the provisions of section 403a (3), the Commissioner of Internal Revenue deducted from the portion of the residuary estate to which certain charitable corporations were entitled under the provisions of the will and codicil a proportionate part of inheritance, succession, legacy, and transfer taxes paid by the plaintiff as executor to certain states before ascertaining the amount of such charitable bequests.

On or about the 20th day of June, 1925, the plaintiff received a letter from said Commissioner of Internal Revenue, notifying it that a deficiency in federal estate tax in the sum of $3,404.72 had been assessed against it as executor of decedent's estate. On or about the 9th day of November, 1925, the plaintiff, as such executor, paid to the defendant collector as aforesaid, under protest, the sum of $3,404.72. On or about the 30th day of November, 1925, the plaintiff, as such executor, filed with the Commissioner of Internal Revenue a claim for refund in the sum of $3,206.72. On or about the 8th day of May, 1926, said claim for refund was rejected by the said Commissioner in its entirety.

The case involves, primarily, the application of section 403a (3) of the Revenue Act of 1921 to the facts in the case at bar. That section provides that, for the purpose of computing the federal estates tax, there shall be deducted from the value of the gross estate: "(3) The amount of all bequests, legacies, devises, or transfers, * * * to or for the use of any * * * corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational pur-

poses, including the encouragement of art and the prevention of cruelty to children or animals, no part of all net earnings of which inures to * * * any private stockholder or individual. * * * "

The question, then, is this: Is the United Workers a corporation "organized and operated exclusively" for any of the purposes mentioned in the act? That this corporation is operated exclusively for charitable purposes is sufficiently clear from the evidence. Nor does the government question that. It rests its case on the proposition that, no matter what the exclusive activities of the corporation are in fact, it was not organized exclusively for charitable purposes.

[1, 2] The suggestion is made, and we think correctly, that in order to determine for what purposes a corporation is organized we must look to its charter. Whatever may be the form of its actual organization, it is the charter that defines the scope of the corporate purpose. In the instant case that purpose is set forth in the following language: "The object for which said corporation is created is the promotion of practical benevolence in the city of New Haven." The defendant contends that "benevolence" is not necessarily "charity," and that therefore the corporate organization is not "exclusively" for a charitable purpose. For the purpose of sustaining this contention, it invokes the rule that statutes exempting property from taxation must be strictly construed.

[3] The rule of strict construction is in the interest of public policy, and when a higher public policy dictates a more liberal attitude, an exception will be found. Bequests for public purposes operate in aid of good government; they perform by private means what ultimately would have to be done at public expense. In such cases, exemption from taxation is not a matter of grace or favor; it is rather an act of public justice. The reason for the rule of narrow scrutiny does not apply to such cases.

The question then reduces itself to this: Is a corporation organized for the promotion of practical benevolence a charitable corporation, within the intendment of the exemption? It is claimed that the word "benevolence" connotes a broader sphere than "charity." We have not, however, been furnished with any illustrations in point. Learned counsel for the government have failed to point out just what corporate activities might be regarded as "benevolent," and yet not "charitable." I am unable to conceive of any expenditure of corporate funds for a "benevolent" purpose which, in its broadest sense, may not be considered "charitable." However, the opposition is not between the word "charity" and the word "benevolence." For the charter prefixes the word "practical" to the word "benevolence." It is the promotion of "practical benevolence" that was the aim of the incorporators. If a "benevolent" act may conceivably not be "charitable," "practical benevolence" assuredly is nothing but a euphemism, connoting naught else but charity. I am of the opinion, therefore, that the United Workers were organized for a purpose within the intendment of the exemption, and that bequests to the corporation are to be deducted from the gross assets in computing the base upon which to assess the estate tax.

[4] The other question in the case involves the overpayment of $842.58, arrived at by the action of the department in deducting approximately $21,000 from the total amount of exemptions. This sum comprises the various inheritance tax levies made by different states upon the various charitable bequests made by the testatrix. The government took the position that these sums were not part of the sums actually received by the beneficiaries, and that they are therefore properly taxable. This position opposes that taken by the Supreme Court of the United States in Edwards v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564, and cannot be sustained.

[5] But it is urged that the specified ground for a refund of this amount was not urged in the plaintiff's claim for refund, and that the plaintiff is therefore precluded from setting up this ground in this action. I am unable to draw any such conclusion from a study of the statute. Obviously the statute requires nothing more than that a claim for refund be duly filed with the Commissioner of Internal Revenue. In order to induce favorable action, a claimant will assign as many grounds for such refund as he is cognizant of. It is not to be expected that a claimant will conceal a valid ground for a refund merely in order to obtain an opportunity of incurring the expenses of litigation. It is to be observed that, whether claimant assigned grounds or not, the statute merely requires that he *file his claim* for refund. To hold, therefore, that a plaintiff is precluded from asserting a reason for a refund that he has not advanced in his notice of claim is to read a condition into the statute not legislated by Congress. To assert that Congress has the power to impose any condition it sees fit to the grant of a right to sue the sovereign is true enough, but also irrelevant. The question here is: What is the condition that Congress has actually imposed?

The defendant cites and relies upon Tuck-

er v. Alexander, 15 F.(2d) 356, and Red Wing Malting Co. v. Willcuts, 15 F.(2d) 626, both decided in the Circuit Court of Appeals for the Eighth Circuit. If these decisions interpreted a statute fixing a rate, or determining a duty of a collector, I should, in the absence of any decisions in this circuit, feel myself constrained to follow them, regardless of my personal views. But a conflict of opinion in the instant case could not constitute a source of embarrassment to administration officials intrusted with the enforcement of the revenue laws. With due deference, therefore, to the judgment of that court, I find myself unable to accept its conclusions, the more so as that court has failed in either case to quote the specific phraseology in the statute upon which it relies. Independent of this, the facts as disclosed in this record ought not to support the defendant's contention, for it appears that, in the various communications received by the executor from the Commissioner with reference to the audit and review of the estate tax return, it was stated that the deduction for charitable bequests was reduced from approximately $874,000 to approximately $794,000, and in each instance it was stated that no deduction was made on account of the bequests to the United Workers, for the reason that this organization was held not to be within the provisions of section 403a (3) of the Revenue Act of 1921.

In none of these communications was there any suggestion that this reduction of the amount of the deduction for charitable bequests was due to anything except the disallowance of the exemption covering bequests to the United Workers. Consequently, when the claim for refund was prepared and filed, the action of the department in disallowing the deduction of the bequests to the United Workers' was the only ground specified.

After the claim for refund was rejected, it developed that the amount of the bequests to the United Workers was in the neighborhood of $60,000, and consequently did not account for the entire reduction of $80,000 in the amount of the charitable bequests. The conclusion was natural that this difference was due to the action of the department in deducting from the amount of the charitable bequests not only the bequests to the United Workers, but also the inheritance taxes payable to Connecticut and other states, which were, in fact, payable out of the residue, and hence reduced the amount of the residue actually passing to the exempt corporations.

Quite unintentionally the Bureau of Internal Revenue, by failing to make any reference to its action in subtracting these state inheritance taxes, and by referring solely to the matter of the United Workers, misled the plaintiff, with the result that the claim for refund only referred to the matter of the United Workers. In these circumstances, the government cannot now urge this technical defense to this part of the claim for refund.

If this technical defense is sustained, it will require a new claim for refund to be filed, and if that is denied a new action will have to be brought, resulting in considerable delay and additional expense to the taxpayer, all of which is occasioned solely by the failure of the bureau itself to give the taxpayer any notice of the position taken by it in regard to this phase of the matter.

Finding for the plaintiff on both features of the case, judgment may be rendered for the plaintiff, to recover the amount set forth in the stipulation, to which reference has already been made, and counsel may submit findings accordingly.