### WARNER v. WALSH, Collector of Internal Revenue.

District Court, D. Connecticut.  July 12, 1928.

No. 3142.

1. **Internal revenue ⟊7(3)—Annuity in lieu of statutory rights in estate held exempt from taxation until purchase price returned (Revenue Acts 1918, 1921 [Comp. St. § 6336⅛a et seq.]).**

An annuity payable first out of income, but if necessary out of principal of a similar trust fund, but acquired solely in lieu of and in consideration for relinquishment of valuable statutory rights in decedent's estate, *held* exempt from taxation under Revenue Acts 1918, 1921 (Comp. St. § 6336⅛a et seq.), until purchase price shall have been returned.

2. **Internal revenue ⟊38(1)—Action to recover taxes illegally collected may be on other grounds than specified in refund claim.**

That specified ground for refund of income taxes was not urged in claim for refund *held* not to preclude claimant from setting up such ground in action to recover the tax.

3. **Internal revenue ⟊38(3)—Taxes voluntarily paid cannot be recovered, though taxpayer was in ignorance of his rights; "involuntary payment."**

Taxes voluntarily paid cannot be recovered, and fact that taxpayer made payment without full knowledge of his rights does not make payment involuntary.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Involuntary Payment.]

4. **Internal revenue ⟊38(3)—Statute providing that payment of tax under protest is not condition precedent to action for recovery thereof as illegally collected held not retroactive (Revenue Act 1924, § 1014[a] [26 USCA § 156]).**

Revenue Act 1924, § 1014 (a), 26 USCA § 156, Comp. St. § 5949, providing that payment of tax under protest is not a condition precedent to maintenance of action for recovery of illegally collected tax, *held* prospective entirely, and is limited, not only to suits begun after its passage, but to suits begun as result of transactions which arose after its passage, and as to payments made and penalties or sums collected after its passage.

5. **Statutes ⟊263—Statutes will be construed as prospective, unless language thereof makes retroactive operation imperative.**

Statute will be construed as prospective entirely, unless words thereof make a retroactive operation imperative.

**6. Internal revenue ⬦⟞⟞38(6)—Action to recover income taxes illegally collected held properly brought against former collector personally (Jud. Code, § 24 [20]; 28 USCA § 41 [20]).**

Action to recover income taxes illegally collected is personal action against collector individually, and personal execution against collector as individual, even though out of office, will be denied only when certificate of probable cause is allowed by the court, and such action was therefore properly brought against former collector, as against contention that it should have been brought against United States, under Judicial Code, § 24 (20), 28 USCA § 41 (20); such statute merely creating an alternative remedy, whereby United States can be sued directly in District Court.

At Law. Action by Eva F. Warner against James J. Walsh, Collector of Internal Revenue. Judgment for defendant.

Arthur M. Marsh, of Bridgeport, Conn., and Edward Holloway, of New York City, for plaintiff.

John A. Danaher, Asst. U. S. Atty., of Hartford, Conn., for defendant.

BURROWS, District Judge. This action was brought by Eva F. Warner against James J. Walsh as a former collector of internal revenue to recover certain income taxes claimed by the plaintiff to have been erroneously and illegally assessed and collected by the defendant, when collector, for the year 1919 and the first half of the year 1920, under the Revenue Act of 1918 and the Revenue Act of 1921 (Comp. St. § 6336⅛a et seq.). The parties entered into a written stipulation as to most of the material facts for purposes of this suit, in which many of the material allegations of the complaint are conceded. In addition to this stipulation, there was oral testimony, which it is not necessary to set forth.

This case differs from the case of Warner v. Walsh, decided by the Circuit Court of Appeals for the Second Circuit November 8, 1926, 15 F.(2d) 367 (and by this District Court, 24 F.(2d) 449), only in the particular that the former case was for the recovery of taxes paid for the years 1917 and 1918.

[1] The first question presented in this case is, quoting the language of the learned judges of the Circuit Court of Appeals in Warner v. Walsh, supra, "whether an annuity, payable first out of income, but, if necessary, out of principal, of a similar trust fund, but acquired solely in lieu of, and in consideration for, the relinquishment of valuable statutory rights in the estate, is income, bequest, or annuity." The Circuit Court held that this was a purchased annuity, and is, until the purchase price shall have been returned,

exempt from taxation. Substantially the same question has recently been passed upon by the Circuit Court of Appeals for the First Circuit in the case of United States v. Bolster, Executrix, 26 F.(2d) 760, resulting in a decision for the taxpayer. The law on this question, therefore, is settled in so far as the instant case is concerned.

[2] The defendant's second claim is that the taxpayer never presented in writing to the Commissioner of Internal Revenue the "alleged purchase for value theory" as a ground for her claim for refund, and therefore the claim for refund was never properly presented, or considered within the meaning of the statutes, and hence this action will not lie. This claim was made to the court in the previous case of Warner v. Walsh (D. C.) 24 F.(2d) 449, and in the case of Union & New Haven Trust Co. v. Eaton, Collector (D. C.) 20 F.(2d) 419, and in both cases Judge Thomas held this claim untenable, and I concur in this view.

[3, 4] The third claim of the defendant is that these taxes in question were paid voluntarily, without protest and without duress, affording the collector a complete defense. A similar claim appears to have been made and passed upon by Judge Thomas in the former Warner v. Walsh case, where he stated that under ordinary circumstances voluntary payments of money may not be recovered, but decided that, under the provisions of section 1014 (a) of the Revenue Act of 1924 (26 USCA § 156; Comp. St. § 5949), taxes illegally assessed and collected may be recovered, whether or not such taxes were paid under protest or duress.

The taxes sought to be recovered in this case were paid in installments, the last installment being paid June 15, 1921. It is well to note, not only that suit was not commenced to recover these taxes until after the passage of the Revenue Act of 1924, but that no claim for refund was made for the taxes collected for the year 1919 until March, 1925, and that no claim for refund for the taxes collected for the first half of the year 1920 was made until March, 1926. The stipulated facts also indicate that payments were made without protest or duress, as do the tax returns in evidence.

The principle that taxes voluntarily paid cannot be recovered is firmly decided in the case of Fox v. Edwards (C. C. A.) 287 F. 669, 34 A. L. R. 973, in which this subject was exhaustively treated and the law clearly settled for this circuit. But counsel claim that the plaintiff in this case did not pay with a full knowledge of her rights, and therefore

that she paid her taxes involuntarily. I am unable to follow the claim of plaintiff's counsel in this particular. It seems to me that the case of Fox v. Edwards, supra, clearly indicates the law for this circuit, and which I am bound to follow in this particular. Nor do the cases cited by the plaintiff prove helpful to the theory they advocate; on the contrary, they indicate that, where the plaintiff pays with full knowledge of the facts or with full means of knowledge of the circumstances attending the assessment, the payments so made may not be recovered. Our Circuit Court in Fox v. Edwards, 287 F. 669, at page 672 (34 A. L. R. 973), says:

"That eminent authority [Cooley] also points out that every man is supposed to know the law, and if he voluntarily makes a payment, which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back. And he adds: 'Especially is this the case when the officer receiving the money, who is chargeable with no more knowledge of the law than the party making payment, is not put on his guard by any warning or protest, and the money is paid over to the use of the public in apparent acquiescence in the justice of the exaction. Mistake of fact can scarcely exist in such a case except in connection with negligence; as the illegalities which render such a demand a nullity must appear from the records, and the taxpayer is just as much bound to inform himself what the records show, or do not show, as are the public authorities. The rule of law is a rule of sound public policy also; it is a rule of quiet as well as of good faith, and precludes the courts being occupied in undoing the arrangements of parties which they have voluntarily made, and into which they have not been drawn by fraud or accident, or by any excusable ignorance of their legal rights and liabilities.'"

My conclusion that these payments were voluntary is not strange, as a reference to Judge Thomas' opinion in the previous case of Warner v. Walsh (D. C.) 24 F.(2d) 449, at page 451, will show that he was satisfied that the plaintiff's payments were voluntary, and the facts in the two cases are identical, except for the years of payment. Judge Thomas, however, believed that section 1014 (a) of the Revenue Act of 1924 (26 USCA § 156 [Comp. St. § 5949]) was retroactive. He says:

"* * * Counsel for the defendant argues that the complaint should be dismissed because nothing appears from the record to indicate that the payments in question were made under duress and protest. I am inclined to the opinion that this objection would have been sound, had it been made prior to the passage of the Revenue Act of 1924. * * * The theory of the action against the collector was that the payment had been exacted under duress, and for that reason a protest accompanying the payment was a condition precedent to a right of action against him. Fox v. Edwards (C. C. A.) 287 F. 669, 34 A. L. R. 973; Coffey v. Exchange Bank (C. C. A.) 296 F. 807. Nor is there anything in the case of Edwards v. Chile Copper Co. (C. C. A.) 273 F. 452, cited by the plaintiff, which militates against this view, as in that case the opinion clearly shows that the stamp taxes therein sought to be recovered were paid under protest."

The question raised by the defendant here becomes startlingly cogent. Judge Thomas in his opinion decided that section 1014(a) of the Revenue Act of 1924, by the force of its amendment, permitted the action to be maintained in behalf of the taxpayer and said: "I am of the opinion that this language changes the rule theretofore prevailing, and that an action may now be maintained against a collector for the recovery of income taxes erroneously paid, regardless of protest."

I am somewhat loath to differ from my associate in his view of the law on this point. He cites as his authority for his conclusion the case of Beatty v. Heiner (D. C.) 10 F. (2d) 390, and particularly at page 392. The learned judges whose opinion he follows cite no authority for the conclusion at which they arrive. It may be worthy of note that the Circuit Court of Appeals for the Third Circuit later reversed the District Court (see Beatty v. Heiner, 17 F.(2d) 743), on other grounds, however, stating that it was unnecessary for the court, in the view it had taken of the case, to pass on the applicability of section 1014 (a) of the 1924 act.

[5] It seems to me that the recognized rule of statutory construction requires that the amendment speak prospectively entirely, unless the words of the act make a retrospective operation imperative, and certainly this cannot be said of section 1014 (a) of the 1924 act under discussion.

"That a statute shall not be given retroactive effect, unless such construction is required by explicit language or by necessary implication, is a rule of general application." U. S. v. St. Louis, etc., Ry. Co., 270 U. S. 1, 3, 46 S. Ct. 182, 183 (70 L. Ed. 435).

"The petitioner maintains that Congress

intended to revive actions against carriers when the period designated by the state statute for bringing them had expired during federal control and asserts that the mischief to be remedied indicates such purpose and the ordinary meaning of the words employed discloses it. The respondent insists that a statute should never be given retroactive effect where another construction is fairly permissible, as here; that if in the circumstances the act of Congress be so construed it would create new causes of action and thus permit the taking of property without due process of law. * * * 'It is a rule of construction, that all statutes are to be considered prospective, unless the language is express to the contrary, or there is a necessary implication to that effect.' [Citing cases.] Applying this rule, we find no circumstances existing when the statute in question was enacted, nor any language therein, which shows that it should be applied to causes barred by limitation before its passage." Fullerton Co. v. No. Pacific, 266 U. S. 435, 437, 45 S. Ct. 143, 144 (69 L. Ed. 367).

Obviously, the collector of internal revenue had a complete defense to this action, had it been brought before the passage of the 1924 act. All of the facts upon which the action is based had become history by the time the act was passed. There is no intention of Congress apparent in the amendment to deprive the collector of his defense as to moneys voluntarily paid to him before the effective date of the act. Indeed, since the action against the collector is personal, to permit the suit to be maintained after the moneys had been paid into the treasury might even subject the collector to a personal execution against him, if facts should appear upon which a court would deny a certificate of probable cause. To hold that the collector is thus divested of his defense to this action would be to give to the statute an effect which is not clearly nor imperatively to be read into it. I believe that the statute is prospective entirely, and it applies, not only to *suits* begun after its passage, but to suits begun as a result of transactions which arose after its passage, and as to payments made and as to penalties or sums exacted and collected after its passage.

In the very recent case of Blodgett v. Holden, Collector, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. ——, the Supreme Court held that Revenue Act 1924, §§ 319–324 (26 USCA §§ 1131–1136; Comp. St. §§ 6336⅘s–6336⅘x), in so far as it undertakes to impose a tax on gifts fully consummated before its provisions taxing gifts came be-

fore Congress, is invalid under the due process clause of the Fifth Amendment. As the court says, on page 147 (48 S. Ct. 106): "* * * It seems wholly unreasonable that one who, in entire good faith and without the slightest premonition of such consequence, made absolute disposition of his property by gifts, should thereafter be required to pay a charge for so doing."

It seems equally unreasonable that a collector, where the tax had been paid to him without protest and without a warning to him not to pay it into the treasury, should be held liable by giving to this 1924 amendment a retroactive effect, when to do so would make him liable under circumstances where all of his actions were in the best of faith and without the possibility of liability at the time he acted. I feel content to rest on my view of the law following the cases above cited, and the decision of the Supreme Court in the case of United States Fidelity & Guaranty Co. v. U. S., 209 U. S. 307, 28 S. Ct. 537, 52 L. Ed. 804, and, not to multiply citations, the case of Barnitz v. Beverly, 163 U. S. 118, 16 S. Ct. 1042, 41 L. Ed. 93, 94, note.

The deprivation of the collector of his defense of voluntary payment (which, as I have held, was clearly available to him and valid in this case) would be fairly analogous to those situations where the running of a statute of limitations had cut off a remedy which the plaintiff might have had for the recovery of property in the possession of another, except for an amending act extending the period of the statute of limitations, thus depriving the defendant debtor of a vested defense. I do not go the length of holding, since it is unnecessary in the view I have taken of the case, that the collector has a vested right in the perpetuation of his defenses, any more than a plaintiff would have in the perpetuation of any remedy, or any remedial process which the Legislature might modify or abolish without destroying the right itself; but where a personal judgment may lie against a collector if the amendment be retroactive, to take away his right to the defense without protecting him on account of his lost right might very well bring such retroactive legislation under the ban of unconstitutionality.

[6] We next come to the fourth claim raised by the defendant, in which he questions the jurisdiction of this court. He has insisted that the action should have been brought against the United States, because of the fact that section 24 of the Judicial Code (U. S. Code, title 28, § 41 (20); (28 USCA § 41

(20), provided, to paraphrase it, that all actions commenced after the passage of the Revenue Act of 1921 for the recovery of taxes illegally assessed and collected shall be brought against the United States in instances where the collector who collected the taxes in suit is either dead or out of office at the time the action is begun.

The whole theory of these actions recognizes that the collector is personally liable for taxes erroneously assessed and collected by him. Sage v. U. S., 250 U. S. 33, 39 S. Ct. 415, 63 L. Ed. 828. If it could be said properly that Rev. Stat. § 989 (28 USCA § 842), with reference to certificates of probable cause, related only to certificates of probable cause given in behalf of a collector *in office* at the time the suit is commenced, much force would be given to the defendant's argument.

At all events, it seems to me that the point must be deemed settled, in view of the decision of the Supreme Court in the case of Smietanka v. Indiana Steel Co., 257 U. S. 1, 42 S. Ct. 1, 66 L. Ed. 99. There the taxes were collected by S. M. Fitch, when a collector of internal revenue, but the taxpayer brought its suit for their recovery against Fitch's successor in office. The Supreme Court again said that the action still is personal; that when the suit is begun it cannot be known with certainty that the judgment will be paid out of the treasury, and thus it becomes a matter for the discretion of the trial court to determine whether or not a certificate of probable cause shall issue. Since a certificate of probable cause did issue in that case, and the Supreme Court expressly held that the certificate could not issue in behalf of Fitch's successor, by implication the certificate might be had in behalf of Fitch himself. The instant action will lie against James J. Walsh individually, because the cause of action is personal, and a personal execution against Walsh as an individual, even though out of office, is denied only when the certificate is allowed by this court.

It would thus appear that, where the action would lie against Walsh, the former collector, personally, Congress, by this amendment to the Judicial Code, merely created an alternative remedy, whereby the United States could be sued directly in the District Courts. It follows that this court has jurisdiction of the action, subject to such defenses as are regularly open to a collector.

In view of my conclusions on the third claim, judgment may be entered for the defendant; and it is so ordered.